IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LINZIE J. LEDBETTER,

**Plaintiff,**

v.

GOOD SAMARITAN MINISTRIES-
A PROJECT OF THE CARBONDALE
INTERFAITH COUNCIL, BOBBY ANDERSON,
AND MICHAEL HEATH,

**Defendants.**                                         No. 13-cv-308-DRH-SCW

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.   INTRODUCTION

Before the Court is a motion for summary judgment brought by defendants Good Samaritan Ministries- A Project of the Carbondale Interfaith Council (Good Samaritan), Bobby Anderson (Anderson), and Michael Heath (Heath) (collectively, defendants) (Doc. 31). Defendants seek summary judgment in their favor as to plaintiff Linzie J. Ledbetter's (Ledbetter) complaint alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), and 42 U.S.C. § 1981. Ledbetter opposes defendants' motion (Docs. 36 and 38). For the following reasons, defendants' motion is **GRANTED**.

## II. BACKGROUND

This Court is familiar with Ledbetter and his work with Good Samaritan. *See Linzie J. Ledbetter v. Good Samaritan Ministries,* 10-cv-740-DRH-SCW (S.D. Ill.) (claims dismissed with prejudice on January 17, 2013). This time around, Ledbetter, acting *pro se*, brings a complaint for retaliation arising from his termination from Good Samaritan on October 20, 2010. Ledbetter alleges he was terminated for filing charges of race discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) against defendants on October 4, 2010. He requests compensatory damages of $2,500,000.00 from each defendant, as well as $2,500,000.00 in punitive damages from each defendant.

Defendants move for summary judgment under FEDERAL RULE OF CIVIL PROCEDURE 56, arguing Ledbetter cannot present evidence of a *prima facie* claim of retaliation, and alternatively, defendant was discharged for honestly held, legitimate, non-discriminatory/non-retaliatory business reasons and Ledbetter has no evidence to the contrary. In light of Ledbetter's *pro se* status, the Court provided Ledbetter clear notice of the need to file affidavits or other responsive materials and of the consequences for not responding to defendants' motion. *See Timms v. Frank,* 953 F.2d 281, 284 (7th Cir. 1992). Ledbetter has responded (Docs. 36 and 38).

### III. FACTUAL ALLEGATIONS

Ledbetter began his employment with Good Samaritan, a tax-exempt organization which provides various services to individuals in need, on November 14, 2007. In June 2010, Ledbetter worked as General Staff for Good Samaritan's emergency shelter (Shelter). Heath is the Executive Director of Good Samaritan. Anderson is the General Staff Supervisor at Good Samaritan and served as Ledbetter's supervisor.

In support of summary judgment, defendants offer statements of Anderson and Heath (*See* Docs. 32-1 and 32-2, Affidavits of Heath and Anderson attesting and affirmatively stating that every fact attributed to them in defendants' motion and memorandum in support is true and correct to the best of their knowledge). Anderson and Heath allege they experienced many behavioral problems with Ledbetter during his employment with Good Samaritan.

Specifically, Anderson and Heath state the following:

On June 17, 2010, Ledbetter "confronted a resident" of Good Samaritan's Shelter and, "demand[ed] to know why she had not completed her chores." If a resident at the Shelter fails to complete her chores, she may face eviction. The resident told Ledbetter that Keith Nevers (Nevers), another General Staff member, told the resident she did not have to complete the chores. Ledbetter told the resident he was going to evict her.

On June 18, 2010, Heath met with the resident about the incident. The resident was, "upset and also said she was afraid of [Ledbetter]." Heath and

Anderson met with Ledbetter, "to express their concerns regarding [Ledbetter's] behavior toward the resident and his handling of the situation." Ledbetter was not disciplined, but "reminded" to, "display a professional attitude toward others including his supervisors, and that future incidents could result in discipline up to and including termination."

Ledbetter denies that the incident with the resident took place in the way defendants describe. He offers a letter allegedly written and signed by the resident at issue in which she states she never told anyone she was "mad" at Ledbetter (Doc. 36-2).

Because of this Court's past experience with Ledbetter, it is aware that Ledbetter filed his first charge of discrimination against the defendants on June 21, 2010. *See Ledbetter v. Good Samaritan*, 10-cv-740-DRH, at Doc. 1.

On September 28, 2010, an incident occurred between Ledbetter and a supervisor. Ledbetter refused to answer the supervisor's questions, "regarding a list and whether a computer was working." When Ledbetter did answer, he "flung his hand toward the computer and told the supervisor that the General Staff could not play games on the computer and it was her fault all the changes had been made." Ledbetter then stated he had nothing to do on the midnight shift and "blamed the supervisor because her office was locked and he no longer had access to confidential documents." The supervisor reported the incident to Heath and stated she felt "intimated by and fearful of" Ledbetter.

Ledbetter also denies that the incident with the supervisor took place in the manner described by defendants.

On September 29, 2010, Heath and Anderson met with Ledbetter to discuss the computer incident with the supervisor. They again, "warned" Ledbetter that he had, "displayed unacceptable behavior and that any further failure to comply with professionalism and conduct requirements that had been previously discussed with him could result in discipline up to and including termination."

Ledbetter filed his second charge of discrimination with the EEOC on October 4, 2010 (Doc. 36-2, p. 42).

On October 5, 2010, Heath and Board President Walter Kent (Kent) met with Ledbetter, "to discuss their concerns regarding his interactions with co-workers and residents of the Shelter." Ledbetter was informed that, "continuing such behavior, engaging with co-workers and residents in an abrasive and intimidating manner, would not be tolerated." Ledbetter was told to, "demonstrate a professional and courteous attitude when dealing with others at the Shelter." Ledbetter was again, "warned that if he failed to comply with these requirements, he would be disciplined up to and including immediate termination." Ledbetter received a letter memorializing the "concerns and repercussions that would occur if he continued to engage in the improper behavior discussed during the October 5, 2010, meeting." While Ledbetter admits that he signed the letter, he states that he did so "under duress."

Defendants allege that following the October 5, 2010, meeting, Ledbetter, "began making false accusations against various staff and Board members accusing them of lying in an attempt to get him fired."

Ledbetter states he did nothing after October 5, 2010, to warrant his termination.

On or about October 14, 2010, Heath and Anderson discussed possible termination of Ledbetter. At that meeting, Anderson, as Ledbetter's immediate supervisor, made the decision to terminate Ledbetter. However, between October 15, 2010, and October 19, 2010, Anderson worked 12 hour shifts at his second job as a nurse and was thus unable to meet with Ledbetter until October 20, 2010, to communicate to Ledbetter the decision to terminate him.

On October 19, 2010, Heath first learned of the October 4, 2010, charge of discrimination with the EEOC. Heath received a phone call from Cindy Hiskes (Hiskes), Grants and Administration Director of Good Samaritan Ministries in Michigan (a separate entity from the defendant herein), stating she had received an EEOC charge addressed to Good Samaritan. Hiskes faxed a copy to Heath. Jeff Jones of the EEOC had instructed Hiskes to return the original EEOC documents and stated he would mail the documents to the correct Good Samaritan. Defendants state this is the first time any defendant in this case had learned of the October 4, 2010, charge of discrimination.

Ledbetter alleges that on October 20, 2010, Anderson called Ledbetter into a meeting and asked Ledbetter if he had filed a second charge of discrimination

with the EEOC. Ledbetter states Anderson said that as of 7:00 a.m., you are no longer employed at Good Samaritan.

## IV. LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All reasonable inferences are drawn in favor of the nonmovant and all factual disputes are resolved in favor of the nonmovant. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

## V. LAW AND APPLICATION

Ledbetter brings his retaliation claim under Title VII and 42 U.S.C. § 1981. The general analysis of retaliation claims is the same under either statute. *See*

*Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 979 n. 2 (7th Cir. 2014) (citing *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 403-04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008)).

Under Title VII, there are two "methods" through which Ledbetter can oppose defendants' motion for summary judgment on his claim of retaliation. First, the indirect method or the *McDonnell Douglas* test. Under this method, the plaintiff must first come forward with evidence of all four elements of a *prima facie* case, including (1) engagement in activity protected by law; (2) meeting of employer's legitimate expectations; (3) suffering of a materially adverse action; and (4) treatment less favorable than a similarly situated employee who did not engage in the protected activity. *See Hobgood v. Ill. Gaming Bd.,* 731 F.3d 635, 641 (7th Cir. 2013); *see generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employee has evidence on each of these four elements, the burden will then shift to the employer to articulate a legally permissible reason for the adverse employment action. If the employer accomplishes this, the third step of the analysis requires the employee to demonstrate the given reason is false. *See Hobgood,* 731 F.3d at 641-42.

As Ledbetter does not allege a "similarly situated" individual received more favorable treatment than he did, it appears he invokes the direct method. Under this method, Ledbetter must offer evidence that: (1) he engaged in protected activity, (2) that he was subjected to an adverse employment action, and (3) that

there was a causal link between the protected activity and the employment action. *See id.* at 642.

The disputed element in this case is causation. Ledbetter must provide evidence from which a reasonable jury could find that defendants terminated Ledbetter because he filed charges of discrimination with the EEOC. *See id.* at 643 (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013) (Title VII retaliation claims require proof that the adverse action would not have happened but for the protected activity)).

Should Ledbetter present a "'convincing mosaic' of circumstantial evidence," of but for causation, the direct method may be satisfied. *Id.* at 643 (citing *Rhodes v. Ill. Dep't. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994))). A reasonable inference of retaliatory intent may be drawn from such evidence as, "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 644 (citing *Teruggi v. CIT Group/ Capital Fin., Inc.,* 709 F.3d 654, 659-60 (7th Cir. 2013) (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011))).

In this case, Ledbetter cites the timing of his termination as evidence of a causal connection. Ledbetter argues that because defendants learned of his

second EEOC charge of October 4, 2010, on October 19, 2010, the fact the decision to terminate him was communicated to him on October 20, 2010, allows him to get his claim passed summary judgment.

The Seventh Circuit has often reiterated that, "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012) (quoting *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2003)); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation."); *Coleman v. Donahue,* 667 F.3d 835, 860 (7th Cir. 2012) ("We have often invoked the general rule that temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter.") (quotation omitted). However, "[w]hen temporal proximity is one among several tiles in an evidentiary mosaic depicting retaliatory motive, [] '[s]uspicious timing . . . can sometimes raise an inference of a causal connection.'" *Coleman,* 667 F.3d at 860 (quoting *Magyar v. St. Joseph Reg'l Med. Ctr.,* 544 F.3d 766, 772 (7th Cir. 2008)); *see also Scaife v. Cook County,* 446 F.3d 735, 742 (7th Cir. 2006) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that

supports the inference of a causal link.") (quoting *Lang v. Ill. Dep't of Children & Family Servs*, 361 F.3d 416, 419 (7th Cir. 2004)).

The Court does not feel this case exemplifies the extreme exception where temporal proximity alone is sufficient to survive summary judgment. *See e.g. Casna v. City of Loves Park,* 574 F.3d 420, 422-23 (7th Cir. 2009) (holding that a one-day time period between the employee's complaint and her supervisor's recommendation to fire her was sufficient).

In this case, the uncontroverted evidence demonstrates that Anderson, as Ledbetter's immediate supervisor, made the decision to terminate Ledbetter on October 14, 2010, five days before any of defendants became aware of Ledbetter's second charge of discrimination filed on October 4, 2010, and nearly four months after he filed his first charge of discrimination with the EEOC. And further, defendants offer uncontroverted evidence of numerous warnings and reprimands provided to Ledbetter concerning behavioral problems defendants experienced with Ledbetter before the filing of his first charge with the EEOC and after the filing of his second.

Ledbetter takes issue with the factual correctness of the alleged behavioral problems defendants experienced with him. However, it is not within this Court's purview to second-guess the decision to terminate Ledbetter, as long as it was not impermissibly motivated. *See Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

Heath and Anderson state Ledbetter's behavioral problems in combination with his "false accusations" made against various staff and the Board "accusing them of lying in an attempt to get him fired," "prompted Heath and Anderson to discuss possible immediate termination of Ledbetter," on October 14, 2010. And at that time, Anderson made the decision to terminate Ledbetter. The termination letter from Anderson, dated October 26, 2010, states, "false accusations against the Kitchen Food Coordinator on the morning of 9/28/10 as well as [Ledbetter's] most recent statements that accuse [] Heath and [Kent] of lying, you have [] not only created a hostile work environment but also one that is laced with insubordination" (Doc. 36-2, p. 15). Ledbetter does not offer any evidence that reasonably demonstrates that these non-discriminatory reasons are not what induced the decision to terminate Ledbetter. *See Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 418 (7th Cir. 2006) (discussing pretext).

Even construing the facts in Ledbetter's favor, he has not presented evidence sufficient enough to create a reasonable inference that had he not filed charges of discrimination, he would not have been terminated. The fact that the decision to terminate Ledbetter was communicated to Ledbetter one day after defendants learned of his second EEOC charge does not allow Ledbetter's claim to survive summary judgment.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** defendants' motion for summary judgment (Doc. 31). Plaintiff Linzie J. Ledbetter's complaint is

dismissed with prejudice. The Clerk is instructed to enter judgment accordingly.

This file is closed.

    **IT IS SO ORDERED.**

Signed this 17th day of July, 2014.

Digitally signed by David R. Herndon
Date: 2014.07.17 12:19:05 -05'00'

**Chief Judge**
**United States District Court**