IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LINZIE J. LEDBETTER,

Plaintiff,

v.

GOOD SAMARITAN MINISTRIES-
A PROJECT OF THE CARBONDALE
INTERFAITH COUNCIL, BOBBY ANDERSON,
AND MICHAEL HEATH,

Defendants.                                    No. 13-cv-308-DRH-SCW

## MEMORANDUM AND ORDER

HERNDON, District Judge:

### I.   INTRODUCTION

Now before the Court is a motion for summary judgment brought by defendants Good Samaritan Ministries- A Project of the Carbondale Interfaith Council (hereinafter "Good Samaritan"), Bobby Anderson (hereinafter "Anderson"), and Michael Heath (hereinafter "Heath") (collectively, defendants) (Doc. 60). Defendants seek summary judgment in their favor as to plaintiff Linzie J. Ledbetter's (hereinafter "Ledbetter") complaint alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), and 42 U.S.C. § 1981.  Ledbetter opposes the motion (Doc. 63). For the following reasons, defendants' motion is **DENIED**.

## II.   BACKGROUND

In this case, Ledbetter, originally acting *pro se* before the Court appointed an attorney to represent him, brings a complaint for retaliation arising from his termination from Good Samaritan on October 20, 2010. Ledbetter alleges he was terminated for filing charges of race discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) against defendants on October 4, 2010. He requests compensatory damages of $2,500,000.00 from each defendant, as well as $2,500,000.00 in punitive damages from each defendant.

The Court previously granted summary judgment and dismissed the case with prejudice (Doc. 40). However, on appeal the Seventh Circuit reversed the summary judgment ruling and remanded the action back to this Court (Doc. 54). The Seventh Circuit also indicated that the Court should consider requesting a lawyer to represent Ledbetter, and attorney A. Courtney Cox was appointed as his counsel (Doc. 52). Now, defendants once again move for summary judgment under FEDERAL RULE OF CIVIL PROCEDURE 56. Defendants argue that despite the Seventh Circuit's prior decision, Ledbetter is unable to present evidence of a *prima facie* claim of retaliation (Doc. 60). Specifically, defendants allege that they received notice of Ledbetter's EEOC charge on October 19, 2010, but deny any causal connection between the EEOC claim and Ledbetter's termination. Defendants argue that the decision to terminate Ledbetter had been made prior to October 19, 2010.

Ledbetter responded opposing the motion and asserting that the deposition testimony provided by Heath, Anderson, and Board President Walter Kent (hereinafter "Kent") was contrary to the affidavits previously submitted to the Court on key issues (Doc. 60). Therefore, Ledbetter argues that the inconsistencies clearly indicate that a genuine issue of material fact exists in this case (*Id.*).

### III. FACTUAL ALLEGATIONS

Ledbetter began his employment with Good Samaritan, a tax-exempt organization which provides various services to individuals in need, on November 14, 2007. In June 2010, Ledbetter worked as General Staff for Good Samaritan's emergency shelter. Defendant Heath is the Executive Director of Good Samaritan. Anderson is the General Staff Supervisor at Good Samaritan and served as Ledbetter's supervisor for the duration of his employment.

In support of summary judgment, defendants offer the deposition testimony of Anderson and Heath (*See* Docs. 61-1, 61-2 and 61-3). Anderson and Heath allege they experienced behavioral problems with Ledbetter during his employment with Good Samaritan. In defendant's memorandum in support of the motion for summary judgment, the defendants allege that "Anderson met with Plaintiff and said he was terminating Plaintiff based upon the complaints of incidents between Plaintiff and residents and co-workers that "don't seem to be getting better."" (Doc. 61-2. at 103, 110).

On October 5, 2010, Heath and Board President Walter Kent (Kent) met with Ledbetter, "to discuss their concerns regarding his interactions with co-workers and residents of the Shelter." (Doc. 61-1, pg. 90) Ledbetter was informed that, "continuing such behavior, engaging with co-workers and residents in an abrasive and intimidating manner, would not be tolerated." Ledbetter was told to, "demonstrate a professional and courteous attitude when dealing with others at the Shelter." Ledbetter was also given a letter memorializing Heath's concerns and possible repercussions that would occur if Ledbetter continued to engage in improper behavior with staff and residents (Doc. 61-5).

Defendants allege that following the October 5, 2010 meeting, Ledbetter, still exhibited unprofessional conduct and demeanor toward co-workers and residents, which ultimately led Anderson to terminate him. Anderson cites to various complaints by co-workers and residents regarding the way Ledbetter "spoke to residents, as well as [Plaintiff's] threatening behavior" as the reason he decided to terminate Ledbetter (Doc 61-2, pg. 88). Ledbetter alleges that on October 20, 2010, Anderson called Ledbetter into a meeting and asked Ledbetter if he had filed a second charge of discrimination with the EEOC. Then, as of 7:00 a.m. on that date, Ledbetter was no longer employed at Good Samaritan.

In response to the defendants' motion, Ledbetter cites to the deposition testimony of Anderson and Heath, where he sets forth contradictory facts compared to those highlighted by the defendants. Specifically, Ledbetter

highlights the inconsistencies in the stories recounted by Heath and Anderson, relative to the timing and basis for his termination.

## IV. LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All reasonable inferences are drawn in favor of the nonmovant and all factual disputes are resolved in favor of the nonmovant. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

## V. LAW AND APPLICATION

Ledbetter brings his retaliation claim under Title VII and 42 U.S.C. § 1981. The general analysis of retaliation claims is the same under either statute. *See*

*Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 979 n. 2 (7th Cir. 2014) (citing *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 403-04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008)).

Under Title VII, there are two "methods" through which Ledbetter can oppose defendants' motion for summary judgment on his claim of retaliation. First, the indirect method or the *McDonnell Douglas* test. Under this method, the plaintiff must first come forward with evidence of all four elements of a *prima facie* case, including (1) engagement in activity protected by law; (2) meeting of employer's legitimate expectations; (3) suffering of a materially adverse action; and (4) treatment less favorable than a similarly situated employee who did not engage in the protected activity. *See Hobgood v. Ill. Gaming Bd.,* 731 F.3d 635, 641 (7th Cir. 2013); *see generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employee has evidence on each of these four elements, the burden will then shift to the employer to articulate a legally permissible reason for the adverse employment action. If the employer accomplishes this, the third step of the analysis requires the employee to demonstrate the given reason is false. *See Hobgood,* 731 F.3d at 641-42.

As Ledbetter does not allege a "similarly situated" individual received more favorable treatment than he did, it appears he invokes the direct method. Under this method, Ledbetter must offer evidence that: (1) he engaged in in activity protected by Title VII, (2) that he was subjected to an adverse employment action,

and (3) that there was a causal link between the protected activity and the adverse employment action. *See id.* at 642.

The disputed element in this case is causation. Ledbetter must provide evidence from which a reasonable jury could find that defendants terminated Ledbetter because he filed charges of discrimination with the EEOC. *See id.* at 643 (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013) (Title VII retaliation claims require proof that the adverse action would not have happened but for the protected activity)).

Should Ledbetter present a "'convincing mosaic' of circumstantial evidence," of but for causation, the direct method may be satisfied. *Id.* at 643 (citing *Rhodes v. Ill. Dep't. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994))). A reasonable inference of retaliatory intent may be drawn from such evidence as, "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 644 (citing *Teruggi v. CIT Group/ Capital Fin., Inc.,* 709 F.3d 654, 659-60 (7th Cir. 2013) (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011))).

Given that "close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment, provided that other evidence

exists to support the inference of a causal link," a plaintiff may survive summary judgment. *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir. 2006), quoting *Lang v. Illinois Dep't of Children & Family Services*, 361 F.3d 416, 419 (7th Cir. 2004)(adverse employment actions began "the same month" plaintiff filed the racial discrimination grievance with his union). "When there is corroborating evidence of retaliatory motive… an interval of a few weeks or even months may provide probative evidence of the required causal nexus." See M*agyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation."). "Deciding when the inference is appropriate cannot be resolved by a legal rule; the answer depends on context…. A jury, not a judge, should decide whether the inference is appropriate." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011).

In this case, Ledbetter cites the timing and of his termination and inconsistencies relating to the basis for his termination as evidence of a causal connection. Ledbetter argues that the defendants learned of his second EEOC charge filed on October 4, 2010, on October 19, 2010. Thereafter, on October 20, 2010, Ledbetter was informed that he was being terminated.

The Seventh Circuit has often reiterated that, "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue." *Harper v. C.R. England, Inc.,* 687 F.3d 297, 308 (7th Cir.

2012) (quoting *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2003)); *Coleman v. Donahue,* 667 F.3d 835, 860 (7th Cir. 2012) ("We have often invoked the general rule that temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter.") (quotation omitted). However, "[w]hen temporal proximity is one among several tiles in an evidentiary mosaic depicting retaliatory motive, [] '[s]uspicious timing . . . can sometimes raise an inference of a causal connection.'" *Coleman,* 667 F.3d at 860 (quoting *Magyar,* 544 F.3d at 772); *see also Scaife v. Cook County,* 446 F.3d 735, 742 (7th Cir. 2006) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link.") (quoting *Lang v. Ill. Dep't of Children & Family Servs*, 361 F.3d 416, 419 (7th Cir. 2004)).

In this case, the timing of the decision to terminate Ledbetter is disputed by the parties, as illustrated in the statements made by Anderson and Heath. According to Anderson, Ledbetter regularly received good evaluations up until the months immediately prior to his termination (Doc, 61-3, pg. 49-50). Additionally, Anderson never indicated that he wanted to terminate Ledbetter prior to the October 5, 2010, meeting with Ledbetter (Doc. 61-2, pg. 135).

Anderson also does not offer a specific date for making the decision to fire him (Doc, 61-3, pg. 84-85).

> A. I don't know the exact date, no.
> Q. But can you give me a time frame?

> A. It would have been after -- after -- no. It would have been after the meeting -- if you say Mike -- us three met October 5 and he was terminated October 20, it's somewhere in that time. I don't -- the exact date, I don't know.

(*Id.* at 87).

> A. I don't know when 1 made the decision.
> Q. I understand that.
> A. Okay.
> Q. I'm just asking, is it possible it was the 19th?
> A. I don't know when I made the decision. I know what you're asking, but that's my answer. I don't know when I made that decision.
> Q. So it could have been -- since you don't know, it could have been any day prior to the 20th?
> A. Could have been.

(*Id.* at 131). In addition to not offering a specific date of the termination, Anderson also cannot explain why he waited to terminate Ledbetter if his decision was already made (Doc. 61-3, pg. 110).

> Q. If you had made the decision by the I5th you could have told him on the 15th, right? A. On the 15th, right. If I had made the decision by the 15th. Yeah.
> Q. Now, does the fact that you did not tell him on the 15th, when you had the opportunity to, indicate to you that you had not yet made the decision?
> A. No. Not necessarily. I don't know why I didn't tell him until the 20th. I can't tell you why.

(Doc. 61-3, pg. 113).

Contradictory to Anderson's statements, Heath stated that the decision terminate Ledbetter was actually made during his October 14, 2010, meeting with Anderson. Thus, the timing of the termination is called into question, given Anderson both does not recall the October 14, 2010 meeting, and claims that he

actually made the decision to terminate Ledbetter prior to speaking with Heath (Doc. 61-3, pg. 91-92).

Furthermore, there is a discrepancy as to the reason for Ledbetter's termination. Anderson cites to the incidents with the shelter residents prior to the October 5, 2010, meeting as the basis for termination (Doc. 61-3, pg. 92). However, Heath recalls that during their October 5, 2010 meeting, Anderson stated that he would not fire Ledbetter based on those prior complaints (Doc. 61-1 pg. 81). Further highlighting the discrepancy, Good Samaritan lawyers, in a letter to the EEOC, stated that Ledbetter was actually terminated "subsequent to his display of defiant and insubordinate behavior" towards Anderson. This is inconsistent with Anderson's story that Ledbetter was terminated because of the way he "spoke to residents, as well as [Ledbetter's] threatening behavior" (Doc 61-2, pg. 88).

Therefore, given the discrepancies surrounding Ledbetter's termination, and construing the facts in Ledbetter's favor, a genuine issue of material fact exists as to the causal connection between the EEOC claim and Ledbetter's termination. Ledbetter has presented evidence sufficient enough to create a reasonable inference that had he not filed charges of discrimination, he would not have been terminated. Thus, the Court will deny summary judgment.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** defendants' motion for summary judgment (Doc. 60). The parties shall contact magistrate Judge

Williams if a settlement conference would be beneficial.

**IT IS SO ORDERED.**

Signed this 13th day of July, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.07.13 12:16:42 -05'00'

**United States District Judge**